UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR06-0099T |
| | ) | |
| JUAN JOJON | ) | |

---

## MOTION FOR SENTENCE CONSIDERATION

Now comes Juan Jojon, the Defendant in the above captioned matter, and moves this Honorable Court, pursuant to Local Rule of Criminal Procedure 32 (2006), to consider and impose a sentence that is sufficient, but not greater than necessary, in compliance with18 U.S.C. § 3553(a). After considering all the appropriate information present in this case, the Court should conclude that the advisory guidelines call for a sentence longer than what is sufficient to comply with 18 U.S.C. § 3553(a). Mr. Jojon requests the Court impose a sentence of 18 months in prison, which will be sufficient in this case to satisfy the purposes of sentencing.

Respectfully submitted
Juan Jojon
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Dennis Jenkins, United States Probation Officer, and Stephanie Browne, Assistant United States Attorney, on February 15, 2007.

/s/ Kevin J. Fitzgerald

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR06-0099T |
| | ) | |
| JUAN JOJON | ) | |

---

MEMORANDUM IN SUPPORT OF SENTENCING

I. Introduction

Mr. Jojon respectfully submits this memorandum to assist the Court in determining a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a) (2005). Additionally, Mr. Jojon submits this memorandum in support of his Motion for Sentencing Consideration advocating for a sentence outside of the suggested guideline range. The Court is required to sentence a defendant below the advisory guideline range if such a sentence is sufficient to achieve the purposes of sentencing. *Id.* Mr. Jojon requests the Court to consider imposing a sentence of 18 months of incarceration. The proposed sentence adequately addresses society's needs of punishment and deterrence without being longer than necessary.

II. Procedural Background

A Cranston police officer stopped Mr. Jojon on March 27, 2006, for an alleged traffic violation. The police took Mr. Jojon into custody to further investigate his identity. Cranston contacted immigration authorities at ICE on March 28, and subsequently determined that Mr. Jojon was illegal alien who had been previously deported. Mr. Jojon was held by State authorities and charged in connection with using a false ID. On August 16, 2006, the State of RI released Mr. Jojon to ICE custody. On September 5, 2006, the government filed a complaint against Mr. Jojon and he appeared initially before the Court on September 6. Mr. Jojon agreed to information charging and waived indictment. He pled guilty to the information on October 6, 2006. Sentencing is scheduled

for February 23, 2007.

III. Sentencing Considerations

A. General

The Court is bound in its sentencing considerations by 18 U.S.C. § 3553(a). The United States Sentencing Guidelines are not the law and the Court is not bound by its suggested sentences. *United States v. Booker*, 543 U.S. 220, 259 (2005). The statute, § 3553(a), requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentence available, the need to avoid unwarranted sentencing disparity, the need to provide restitution, and the suggested guideline range. 18 U.S.C. § 3553(a)(1), (a)(3)-(7). The primary sentencing mandate of § 3553(a) directs the sentencing court to impose the minimally-sufficient sentence to achieve the statutory purposes of punishment—justice, deterrence, incapacitation, and rehabilitation: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." 18 U.S.C. § 3553(a) (emphasis added).[1] This so-called "parsimony provision" is not simply a factor to be considered in determining sentence; it represents a cap above which the Court is statutorily prohibited from sentencing, even when a greater sentence is recommended by the sentencing guidelines. *Cf., United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part).[2] If the Court feels a sentence below the guidelines supports the purposes of sentencing then

---

[1] The statute provides, in pertinent part, that:

"the court consider the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"

18 U.S.C. § 3553(a)(2) (2005).

[2] The precise meaning of the provision, however, is difficult to discern. *See United States v. Navedo-Concepcion*, 450 F.3d 54, 58-59 (1st Cir. 2006) (pointing out that most of the purposes of sentencing weigh negatively toward a defendant and that "there is no mathematical

the Court must impose that particular sentence.

The statutory language notwithstanding, the First Circuit has proclaimed that the advisory guideline range is not just a mere factor in the list above. *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006); *see also United States v. Thurston*, 456 F.3d 211, 215 (1st Cir. 2006), *United States v. Smith*, 445 F.3d 1, 4(1st Cir. 2006). The Circuit Court believes the guidelines should carry more weight than the other considerations because they "represent the only integration of the multiple sentencing factors set forth in § 3553(a), often reflect past practice, and bear the imprimatur of the Sentencing Commission." *Thurston*, 456 F.3d at 215 (quoting *Smith* 445 F.3d at 4). Beyond the declaration of heightened importance, the guidelines are not presumptively or per se reasonable, and still reflect generalizations in sentencing. *Jimenez-Beltre*, 440 F.3d at 518. The Court made that distinction seemingly to avoid the appearance of reestablishing a mandatory sentencing scheme. *Id.* (as struck down in *Booker*). Unfortunately, the heightened influence of the guidelines, as well as the sliding scale of justification for sentences outside of the guidelines[3], continues to embrace and support a de facto mandatory sentencing scheme.[4]

This Court must guard against any de facto mandatory sentencing scheme. *Booker*, 543 U.S. at 258-61 (mandatory sentencing schemes unconstitutional). While the guidelines incorporate a number of sentencing factors, they do not include any analysis, evaluation, or consideration of an individual's unique characteristics; they are generalizations. *See Jimenez-Beltre*, 440 F.3d at 518. An individual's background, character, and upbringing cannot be easily quantified in a guideline system, nevertheless, the Court must consider that unique individual information. 18 U.S.C. § 3553(a). In short, the guidelines represent cookie cutter justice at its worst; one size does not fit all. The Court must eschew general application of the advisory guidelines and consider all of the unique

algorithm for the perfect sentence.").

[3] The First Circuit now requires greater justification for sentences outside of the advisory guideline range depending on how much the sentence varies from the guideline. *Thurston*, 456 F.3d at 215 (citing *Smith*, 445 F.3d at 4).

[4] In fact, the First Circuit has yet to reverse a guideline sentence as unreasonable while reversing all below guideline sentences appealed by the government. *See* NYCDL Appendix to Amicus Brief in *Rita v. United States* and *Claiborne v. United States* (excerpt attached; available at www.nycdl.org (reasonableness review database).

characteristics of the defendant when determining this sentence. The sentencing judge is in the best position to evaluate individual defendants under § 3553(a) and determine the appropriate sentence.[5] Mr. Jojon presents ample circumstance to warrant the Court's imposition of a sentence below the advisory guideline range in this instance.

B. Personal Background

Mr. Jojon grew up in a small town in Mexico, Cruz Quemada Gro. His parents separated when he was young and his mother and grandfather raised Mr. Jojon and his sisters. He dropped out of school at a very young age and went to work to help support his family. He decided to come to the United States to work and send money back to his family in Mexico.

Mr. Jojon came to the US in 1996. From that time until his arrest in 2000 he worked mainly in factory jobs. He led a relatively normal life within the Mexican immigrant community participating in social events, soccer and basketball games, and other community events. He also reconnected with his childhood friend, Cristobal Tornez (now Mr. Jojon's brother in law). Mr. Tornez came to the US in 1997, but has known Mr. Jojon from Cruz Quemada Gro since he was about 5 years old. Mr. Tornez recalls seeing Juan about every week during this period at various events. Mr. Tornez did not know that Mr. Jojon had any involvement with drugs but does remember that Juan was arrested for a drug delivery and subsequently deported.

Mr. Jojon's sister, Nadia, came to the US in 2000 while Mr. Jojon was at the ACI. She met and married Mr. Tornez in 2001. She has worked has worked at the same company since 2000. Nadia relates that her family's situation in Mexico is fairly bleak. There are not many jobs available and none have decent salaries. Her mother has problems with her knees and her grandfather is too old and frail to help support the household. He is now 74 years old and had a brain tumor removed in the past two years. Her younger sister, Selene, although doing well as a college student, has been diagnosed with breast cancer. She remembers that Juan sent money home before his arrest and also how important that money was for their well being. After deportation, Juan was unable to find a job

[5]Comparing other § 3553(a) factors to advisory guidelines actually resembles the comparison of apples to oranges because only the guidelines directly coincide with a time period; the sentencing court must then look to the other factors to determine if that suggested period of incarceration is appropriate under all of the circumstances in the case. *Jimenez-Beltre*, 440 F.3d at 525 (Lipez, J., dissenting) (emphasis added).

in Mexico which was sufficient for him to support the family.

Mr. Tornez states that Juan returned from Mexico and came to live with he and Nadia in Providence in 2003. The Tornez's also had a son by that time, Brian Tornez. Mr. Jojon lived with the family, helped support the household, sent money back to the family in Mexico, and became, as Mr. Tornez characterizes, a good uncle to Brian. Both Cristobal and Nadia state that Juan was not using drugs or abusing alcohol while living with them. He landed a full time job shortly after returning from Mexico. Bashar Sasa, proprietor of Sasa HVARC hired Mr. Jojon, under the name Hipolito Garcia, as a laborer for his heating and air conditioning company. Mr. Jojon worked continuously from July, 2003, until Mr. Sasa laid him off in February, 2006. Mr. Sasa laid Juan off because of a downturn in the business. Mr. Sasa felt that Mr. Jojon was a good worker.

Although Mr. Jojon made a serious mistake when he first came to the US, Mr. Tornez feels that he had turned his life around. He was a productive and supportive member of the family. He sent money home to help support his mother, sisters, and grandfather. He worked hard and held a good job for 2 ½ years. Most importantly, according to Cristobal's and Nadia's accounts, Mr. Jojon had not re-engaged in the type of misbehavior which led to his incarceration and deportation in 2000. Mr. Jojon has rehabilitated himself.

C. Criminal History

Mr. Jojon's criminal history is not significant in that it neither shows him to be a danger to the community nor a candidate for recidivism. Mr. Jojon has a seven year old conviction for a hand to hand delivery of cocaine. He served a sentence and was ultimately deported. When he returned to the US he did not return to dealing drugs. He found a job, worked, and supported both himself and his family. His conduct since returning clearly shows he has rehabilitated himself. The second conviction on his record should not trouble the Court with regard to sentencing. Essentially Mr. Jojon gave a Cranston Police Officer his driver's license during a traffic stop; his license identified him as Hipolito Garcia and was therefore a false identification. Despite the heavy handed sentence, this conviction does not indicate any danger of recidivism.

Further evidence of his rehabilitation is his positive reaction to his incarceration pending the disposition of this case. He has been housed at the Wyatt facility since September and has received no disciplinary action while also maintaining a job and participating in programs and classes. *See*

Cornell Letter (attached). Also notable was his decision to waive the grand jury process and accept the consequences of his decision to return to the US. He thus saved the government valuable time and resources. His behavior since his incarceration, and indeed since his return to the US, is better representative of Mr. Jojon's true character than his 1999 conviction. This Court should conclude that the guidelines overstate the seriousness of Mr. Jojon's criminal record and lessen its impact on his ultimate sentence.

E. Nature of the Offense

Like most illegal re-entry cases, Mr. Jojon came back to the United States to work, make money, and help support his family. There is no aggravating circumstance involved in his return. He found a job upon his return and maintained continuous full time employment until his arrest. He also sent money home to help support his family in Mexico. Unlike many persons previously deported after drug trafficking crimes, Mr. Jojon did not return to this destructive conduct. Atypically, Mr. Jojon established a violation free life here in the US save for his identity. This Court should consider Mr. Jojon's conduct since his return and conclude that it warrants a sentence below the suggested sentencing range.

IV. The Minimally-Sufficient Sentence

The parsimony provision of 18 U.S.C. § 3553(a) imposes a statutory cap on sentences, regardless of what is recommended under the sentencing guidelines. The sentence cannot be greater than necessary to achieve the purposes of punishment. 18 U.S.C. § 3553(a)(1). Those purposes including deterrence, punishment, respect for the law and rehabilitation. Mr. Jojon requests the Court to consider a sentence below the advisory guideline range. The proposed sentence well achieves the goals of deterrence, incapacitation, and respect for the law, and Mr. Jojon is not in need of rehabilitative services.

In determining the minimally-sufficient sentence, the Court must basically ask whether a more severe sentence would achieve greater justice, deterrence, incapacitation, or rehabilitation. The advisory guideline only considers the fact of the present conviction and Mr. Jojon's prior record. Additionally, the guideline for illegal re-entry, U.S.S.G. 2L1.2, double counts his prior record by basing an offense level enhancement on his prior conviction. While this double counting may be

allowed under this particular guideline section, it does not create an advisory sentencing range that promotes respect for the law or provides for a fair and just punishment. In essence, this guideline now punishes Mr. Jojon again for his drug charge seven years too late. Also, the time he spends in prison will only serve the purpose of warehousing Mr. Jojon, at great government expense, until his ultimate deportation. The advisory guidelines also fail to consider Mr. Jojon individually as required by § 3553(a)(1) (individual's unique background and characteristics).[6] The sentence imposed by the Court cannot pass the reasonableness standard of review if it does not promote respect for the law or provide for a fair and just punishment. 18 U.S.C. § 3553(a)(2). The advisory sentencing range recommended here does not comport with those purposes of sentencing and the Court cannot apply the guidelines in any kind of general or presumptive manner. As a whole, the facts and circumstances present here warrant a sentence significantly below the advisory range to effect a fair and just punishment.

## V. Conclusion

For all of these reasons, Mr. Jojon asks the Court to impose a sentence of 18 months in prison.

Respectfully submitted
Juan Jojon
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

[6] Prominent, though not previously discussed, is the fact that Mr. Jojon will be deported after serving this sentence. Deportation, obviously, further decreases the chance of re-offending.

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Dennis Jenkins, United States Probation Officer, and Stephanie Browne, Assistant United States Attorney, on February 15, 2007.

/s/ Kevin J. Fitzgerald

CORNELL

**Cornell Companies, Inc.**
**People Changing People**

February 8, 2007

Kevin J. Fitzgerald
10 Weybosset Street
Providence, RI 02903

**Re: Juan Jojon**

Dear Mr. Fitzgerald:

Please be advised that Mr. Jojon was received at the Donald W. Wyatt Detention Facility on September 06, 2006. He is being held for The United States Marshals Service.

While housed at this facility Mr. Jojon has maintained a positive attitude and adjustment. He has not received any discipline reports. Mr. Jojon is currently participating in the inmate workers program as a unit worker. He is also participating in a typing class, and he attends religious services on a weekly basis.

If you should have any questions feel free to contact my office at (401) 721-0368.

Sincerely,

Patrick Toolin
Case Manger

FEB 12 2007